UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------
JASON WIMBERLY,

                Plaintiff,        20-cv-2880 (JGK)

     - against -             MEMORANDUM OPINION
                                              AND ORDER
AUTOMOTIVEMASTERMIND, INC.,

                Defendant.
------------------------------------

JOHN G. KOELTL, District Judge:

    The pro se plaintiff, Jason Wimberly, brought this action against automotiveMastermind, Inc. ("aM"), alleging discrimination and retaliation in violation of the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12203 & 12112, Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Genetic Information Nondiscrimination Act of 2008 ("GINA"), 42 U.S.C. § 2000ff et seq., as well as the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

    The defendant moves to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is **denied**.

I

    The following facts are drawn from the Complaint ("Compl.") and are accepted as true for the purposes of this motion.

The defendant aM, has its principal place of business in New York City and provides software solutions to the automotive industry. Compl. at pp. 2-4. Wimberly, an African American male and a New York State resident, began working at aM in August 2017 as a Sales Development Representative. Compl. ¶¶ 2, 5-6.

Wimberly alleges that he and other black male colleagues were continuously subjected to a hostile work environment based on their gender, race, and color. Compl. ¶ 11. As an example, Wimberly alleges that white male colleagues would frequently make inappropriate sexualized jokes and were never reprimanded. Compl. ¶¶ 12-14. However, an African American colleague was accused of sounding "[t]oo [g]hetto" on the phone, was referred to as a "[g]hetto [m]otherfucker," and was written up for sounding "too hood." Compl. ¶¶ 16-17. Wimberly brought concerns about the disparate treatment of African Americans to his supervisor, Carla Nurse, who downplayed his concerns. Compl. ¶ 18. Wimberly has also alleged that he and another African American male colleague were reprimanded about the ratio of their sales appointments that came from interdepartmental referrals, a practice for which white and female colleagues were praised. Compl. ¶¶ 19-20.

On or about April 13, 2018, Wimberly was accused of stealing food and drink from a hotel by billing the items to other hotel rooms. Compl. ¶¶ 3, 21. Wimberly was also accused of

refusing to leave a female co-worker's desk when asked by the co-worker to leave, and separately, that he complimented another female co-worker's wedding ring and a purse. Compl. ¶ 23. These allegations were brought to Wimberly's attention by Nurse and Bari Bauksbaum, Senior Human Resources Business Partner, in a video meeting on April 20, 2018, in which Wimberly received a final warning. Compl. ¶¶ 22-23. Wimberly admits that he complimented his colleague on her wedding ring but denies the other acts of which he was accused. Compl. ¶ 24. Wimberly also alleges that he was singled out to "stay an arm['s] length from all female employees." Compl. ¶ 56.

Wimberly also alleges discrimination and retaliation on the basis of disability. Compl. ¶ 57-59. The sales department at aM instituted a morale-boosting policy called "Power Hour," as part of which the sales representative made calls while standing. Compl. ¶ 27. Wimberly's disabilities prevented him from standing for a long time, and he asked for an accommodation. Compl. ¶ 28. The management allowed him to remain seated but pressured him to sit away from the rest of the sales team. Compl. ¶ 28. Furthermore, Wimberly alleges he was excluded from a company event—a celebration on the occasion of an intern's last day at the company—after he declined participating in an "Escape Room" event due to his disabilities but confirmed to the Human Resources director that he still wished to be invited to company

3

events. Compl. ¶¶ 30-32. Moreover, aM's employees wrote disparaging remarks about persons with disabilities on a public board. Compl. ¶ 1.

On July 23, 2018, Wimberly filed a petition in New York State Supreme Court for pre-action discovery regarding the alleged discriminatory actions and defamation to which he alleges he was being subjected. Compl. ¶¶ 4, 42. Wimberly also alleges that he repeatedly told his colleagues that someone was spreading misinformation about him and that he openly expressed his concerns about potential discrimination and his intent to file suit. Compl. ¶ 45.

In August 2018, Wimberly requested time off to see his physician to refill his medications, which Nurse approved. Compl. ¶ 38. Nurse then pressured him to change or cancel the doctor's appointment to make himself available to attend an early morning video meeting with Nurse. Compl. ¶ 40. Approximately three weeks after he filed the New York State Supreme Court petition, Wimberly was terminated. Compl. ¶ 4.

On June 11th, 2019, Wimberly filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC"). Compl. at 3. The EEOC staff told him that they would issue him a right to sue letter, but the complaint does not state whether Wimberly received the letter or on what date. Id.

## II

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).[1] The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6),

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

5

the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Yajaira Bezares C. v. The Donna Karan Co. Store LLC, No. 13-cv-8560, 2014 WL 2134600, at *1 (S.D.N.Y. May 22, 2014).

### III

The defendant argues that the complaint should be dismissed because the claims under Title VII, the ADA, and GINA are untimely, because the Section 1981 claim fails to state a claim, and because the Court should decline to exercise supplemental jurisdiction over the state and local law claims.

6

## A

The defendant argues that the Title VII, the ADA, and GINA claims should be dismissed because they were filed more than 90 days after the EEOC issued the right-to-sue letter.

Actions alleging employer violations of Title VII, the ADA, and GINA are subject to the same administrative procedure requirements. See 42 U.S.C. §§ 2000e-5(e)(1); Id. § 12117(a) (adopting the administrative procedures of Title VII to the ADA); Id. § 2000ff-6(a)(1) (adopting the administrative procedures of Title VII to GINA); McInerney v. Rensselaer Polytechnic Inst., 505 F.3d 135, 138 (2d Cir. 2007) (Title VII and ADA); Yajaira Bezares C. v. The Donna Karan Co. Store LLC, No. 13-cv-8560, 2014 WL 2134600, at *5 (S.D.N.Y. May 22, 2014) (GINA). Pursuant to these requirements, a plaintiff must first file a charge with the EEOC. McInerney, 505 F.3d at 138. Then, after the EEOC issues a right-to-sue letter, a claim must be filed in a federal district court within 90 days of the claimant's receipt of the letter. Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 37 (2d Cir. 2011). In determining when the right-to-sue letter was received, courts rely on a presumption that a notice provided by a government agency was received three days after its mailing. Id.

In this case, the plaintiff states that he filed a charge with the EEOC on June 11, 2019 and the EEOC staff told him that

7

they would issue him a right to sue letter, but the complaint is silent on whether the plaintiff received a right-to-sue letter from the EEOC or when he received it. Instead of information in or documents attached to the complaint, the defendant relies on a copy of the notice of right to sue that the defendant included as an exhibit with the motion to dismiss and which states that the notice was mailed on December 19, 2019. Based on that date, together with the three-day delivery presumption, the defendant calculates that the action was commenced 15 days past the 90-day deadline. On this basis, the defendant argues that the claims brought pursuant to Title VII, ADA, and GINA must be dismissed as untimely.

As an initial matter, on a motion to dismiss, with a few exceptions that do not apply here, the Court cannot consider materials outside the plaintiff's complaint without converting the motion to a motion for summary judgment under Federal Rule of Civil Procedure 56. See Chambers, 282 F.3d at 152-53. Therefore, the Court cannot consider the defendant's exhibit in ruling on the motion to dismiss.

Furthermore, the Second Circuit Court of Appeals has held that "the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 491 (2d Cir. 2018). And because the exhaustion rules under the ADA and

8

GINA incorporate the Title VII rules by reference, the same reasoning applies to those claims. Accordingly, the plaintiff does not need to plead facts in the complaint demonstrating that he followed the requisite administrative procedures. See Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses . . . and to affirmatively plead facts in avoidance of such defenses."). As the Court of Appeals made clear in the analogous context of an affirmative defense based on the statute of limitations, "dismissal is appropriate only if a complaint clearly shows the claim is out of time." Harris v. City of N.Y., 186 F.3d 243, 250 (2d Cir. 1999); see also Hardaway, 879 F.3d at 491 (reasoning that EEOC administrative filing requirements operate like a statute of limitations). Because the complaint in this case does not conclusively establish that the plaintiff failed to follow the administrative procedures, including the 90-day filing rule, the claims cannot be dismissed for failure to comply with the procedures.

Accordingly, the motion to dismiss the Title VII, ADA, and GINA claims is **denied**.

9

**B**

The defendant next argues that the Section 1981 claims should be dismissed for the plaintiff's failure to allege facts showing that he is entitled to relief.

To establish a claim under Section 1981, a plaintiff must establish that (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate against the plaintiff on the basis of race; and (3) the discrimination concerned "one of the statute's enumerated activities," Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000). The enumerated activities include the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). This language has been interpreted to encompass discrimination in private employment. See Johnson v. Ry. Express Agency, 421 U.S. 454, 459-60 (1975); Ofori-Tenkorang v. Am. Int'l Grp., Inc., 460 F.3d 296, 300 (2d Cir. 2006). The plaintiff bears the burden throughout an entire Section 1981 lawsuit to "prove that, but for race, [the plaintiff] would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020).

The plaintiff in this case alleges two theories of discrimination: disparate treatment and hostile work environment.

To survive a motion to dismiss a disparate treatment claim under Section 1981, the complaint must plausibly allege that "the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of N.Y., 795 F.3d 297, 311 (2d Cir. 2015). "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. . . . An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012).

In this case, the defendant only contests that the plaintiff was the subject of an adverse employment action. To support the disparate treatment claim, the plaintiff alleges that he was subjected to "excessive scrutiny," namely, a warning about the ratio of his sales appointments that came from interdepartmental referrals. However, such "reprimands without any accompanying negative consequences . . . do not constitute an adverse employment action." Allen v. City of New York, No. 18-cv-9663, 2019 WL 5450874, at *6 (S.D.N.Y. Oct. 23, 2019); see

11

also Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001), aff'd, 51 F. App'x 55 (2d Cir. 2002) (collecting cases in which courts found that "reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions"). Accordingly, the Section 1981 claim fails under a disparate treatment theory.

"In order to establish a hostile work environment claim under 42 U.S.C. § 1981, a plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. A hostile working environment is shown when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive. The plaintiff must show more than a few isolated incidents of racial enmity, although a hostile work environment can also be established through evidence of a single incident of harassment that is extraordinarily severe." Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 723-24 (2d Cir. 2010).

In this case, the plaintiff has failed to establish a hostile work environment. The complaint includes an allegation that the plaintiff and other African American men were subject to disproportionate scrutiny, while white male colleagues made sexualized jokes without consequence, and that an African

12

American colleague was told he sounded "[t]oo [g]hetto" on the phone and was referred to as a "[g]hetto [m]otherfucker." The complaint also alleges that the plaintiff was the subject of various false accusations. These allegations do not rise to the requisite level of severity and pervasiveness. First, the Court of Appeals and courts in this circuit have found that allegation of reprimands and scrutiny similar to or worse than the conduct alleged in this case do not suffice to create a hostile work environment. See, e.g., Littlejohn, 795 F.3d at 321 (finding no hostile work environment where the defendant used harsh tones with the plaintiff, wrongfully reprimanded the plaintiff, said to the plaintiff "you feel like you are being left out," and that he did not "understand the culture" at the company); Fleming v. MaxMara USA, Inc., 371 F. App'x 115, 119 (2d Cir. 2010) (concluding that no hostile work environment existed even though "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work . . . threw books, and sent rude emails to her"); Davis-Molinia v. Port Auth. of N.Y. & N.J., No. 08-cv-7586, 2011 WL 4000997, at *11 (S.D.N.Y., Aug. 19, 2011) (finding that "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," "yell[ing] and talk[ing] down to," and an increased workload of menial tasks, among other factors, was not enough to show that

defendants' conduct was sufficiently severe or pervasive), aff'd, 488 F. App'x 530 (2d Cir. 2012).

Second, the allegation regarding a colleague being demeaned appears to capture an isolated incident that did not rise to the level of severity needed to support a claim of a hostile work environment. See Dickens v. Hudson Sheraton Corp., LLC, 167 F. Supp. 3d 499, 516-17 & 517 n.12 (S.D.N.Y. 2016) (collecting cases for the proposition that "[i]solated incidents of discriminatory comments or conduct are not sufficient to establish a hostile work environment"). Third, the allegations of the plaintiff's being the subject of various false accusations include no nexus to the plaintiff's race, let alone the requisite showing that race was a but-for cause, see Comcast, 140 S. Ct. at 1019, and accordingly cannot support a hostile work environment claim pursuant to Section 1981. Therefore, the complaint does not include sufficient facts to demonstrate a hostile work environment.

Accordingly, motion to dismiss with respect to the Section 1981 claim is **granted** and the claim is dismissed without prejudice.

C

The defendant argues that the Court should decline to exercise supplemental jurisdiction over the plaintiff's state and local law claims if the Court dismisses all of the

14

plaintiff's federal law claims. This argument is moot because the Court has not dismissed the federal claims in their entirety and the Court continues to have subject matter jurisdiction over the case.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the motion to dismiss is **denied** with respect to the Title VII, ADA, GINA, NYSHRL, and NYCHRL claims. The motion to dismiss is **granted without prejudice** with respect to the Section 1981 claim. The plaintiff may file an amended complaint within thirty (30) days of this order.

The Clerk of the Court is directed to close docket numbers 32, 35, and 56.

**SO ORDERED.**

**Dated:** New York, New York
May 21, 2021

_____
John G. Koeltl
United States District Judge